**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **JPMORGAN CHASE BANK, N.A.** <br> *Plaintiff,* <br><br> **v.** <br><br> **DONALD DENENNO et al.,** <br> *Defendants.* | **Civil No. 24-2287** |

**MEMORANDUM**

**Costello, J.**                                                                                    **April 9, 2026**

This case involves a dispute over a property owned by non-party Joseph DeNenno and Defendant Donald DeNenno ("DeNenno") as tenants in common ("the Property").  Plaintiff JPMorgan Chase Bank, N.A. ("Chase") accidentally released the Property from two mortgages that DeNenno gave to Chase as security for two loans.  DeNenno and his wife, Karen Boyd ("Boyd") (together, "Defendants"), continue to own and live on the Property and have encumbered it with additional mortgages.

Chase filed this action seeking an equitable lien on the Property.  Chase now moves for summary judgment, arguing that it is entitled to an equitable lien on the Property based on two theories.  First, that the parties intended to encumber the Property with the mortgages that Chase accidentally released.  Second, that Defendants have been unjustly enriched by continuing to own and live on the Property without making any payments to Chase.  Defendants filed a cross motion for summary judgment, primarily arguing that Chase is responsible for its own errors and that Chase's claim to an equitable lien did not survive DeNenno's Chapter 7 bankruptcy discharge.  For the reasons that follow, the Court will grant Chase's motion and deny Defendants' motion.

## I.   BACKGROUND

Chase issued two loans to DeNenno in May of 2007: a $759,000.00 loan and a home equity line of credit up to $177,700.00.  ECF No. 8 ¶¶ 17-21.  In return, DeNenno granted Chase mortgages that included legal descriptions for three properties as security, which Chase describes as "Premises 1.1, Premises 1.2, and Premises 1.3A."  *Id.* ¶¶ 19-21.  "Premises 1.1" is "the Property" at issue in this action.  DeNenno then used the first loan to pay off an existing mortgage owned by Chevy Case Bank.  *See id.* ¶ 71 (citing ECF No. 31-9 at 2 (showing DeNenno used the $759,000.00 loan to pay off a Chevy Chase Bank mortgage encumbering a property in West Chester, Pennsylvania)).

In August of 2012, DeNenno informed Chase that only the Property (Premises 1.1) should serve as security interest for the two loans and instructed Chase to release the other two properties (Premises 1.2 and 1.3A) from the mortgages.  *Id.* ¶¶ 26-29.  Chase agreed to release the two properties identified by DeNenno.  *Id.*  However, Chase mistakenly executed partial releases on the wrong two properties.  Instead of releasing Premises 1.2 and 1.3A as instructed, Chase released the Property (Premises 1.1) and Premises 1.3A.  *Id.* ¶¶ 30-33.  Chase claims that it did not learn of its error until September 26, 2022, when US Bank Trust Association, the owner of the first mortgage at that time, notified Chase of a discrepancy with the property descriptions. *Id.* ¶ 34.

Following Chase's erroneous release of the Property from the mortgages, DeNenno acquired an additional mortgage on the Property through Metro Bank recorded on January 15, 2014, for $688,000.  *Id.* ¶ 38 (citing ECF No. 31-18).  A few months later, in July of 2014, DeNenno transferred the Property from Joseph DeNenno's estate to himself, and then to himself and Boyd as tenants by the entireties.  *Id.* ¶¶ 35-37; *see also* ECF No. 31-17 at 2.  DeNenno and

Boyd then took out another mortgage on the Property through Metro Bank, recorded on February 12, 2015, for $700,000.  ECF No. 8 ¶ 31 (citing ECF No. 31-19).

In November of 2021, DeNenno filed a no-asset Chapter 7 bankruptcy petition.  *See generally* ECF No. 31-21 (bankruptcy docket).  His petition was granted in April of 2022, which discharged his pre-bankruptcy personal liabilities.  ECF No. 31-1 at 8; *see also* ECF No. 31-21 at 4.  DeNenno and Boyd continue to live on the Property together.

Chase filed this action in 2024 seeking an equitable lien on the Property.  It now moves for summary judgment on that claim.  *See generally* ECF No. 31.  Chase argues that it is entitled to an equitable lien on the Property both because the parties intended to encumber the Property with the Chase mortgages and because Defendants would be unjustly enriched absent a lien. ECF No. 31-1 at 11-12.  Chase contends that DeNenno borrowed nearly $1 million in mortgages from Chase, failed to inform Chase when it erroneously released the Property from the mortgages, conveyed half of his interest in the Property to Boyd, encumbered the Property with additional loans in excess of $1.5 million, then declared Chapter 7 bankruptcy to discharge his remaining personal obligations.  *Id.* at 1.  In Chase's view, Defendants are trying to "have their cake and eat it too" by continuing to own and live on the Property without making any repayments to Chase.  *Id.*

Defendants respond that Chase is at fault for its "repeated inability to properly record or release its mortgages and its failure to follow established methods of protecting its claims."  ECF No. 33-3 at 1.  They argue that all of DeNenno's obligations to Chase were discharged during his Chapter 7 bankruptcy proceedings.  *Id.* at 4.  According to Defendants, if Chase wanted its *in rem* claim on the Property to survive the bankruptcy, it should have (1) objected to the classification of its claim, which would have triggered a hearing regarding whether Chase had an equitable

claim to a lien on the Property; (2) objected to DeNenno's entireties exemption in the Property; and (3) asserted its equitable right to the imposition of an actual lien. *Id.* Defendants further argue that, even if Chase had taken these steps, its claims would still fail because (1) Chase did not plead that the Property was fraudulently transferred; (2) Chase did not have a lien that would have survived DeNenno's bankruptcy proceedings; and (3) Chase cannot establish that it is entitled to an equitable lien under Pennsylvania law. *Id.* at 12.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine." *Bennett v. SEPTA*, 23cv1271, 2024 WL 404959, at *6 (E.D. Pa. Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, 24cv1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if, "based on the evidence, 'a reasonable jury could return a verdict for the nonmoving party.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "When the movant is the defendant, they have the burden of demonstrating that the plaintiff 'has failed to establish one or more essential elements of her case.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  "If Plaintiff fails to raise a genuine dispute of material fact as to any element of his prima facie case, summary judgment in favor of Defendant is warranted."  *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 433 (E.D. Pa. 2023) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

In contrast, where the moving party will bear the burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win."  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007) (citations omitted).

## III.    DISCUSSION

There are two ways that a court can impose an equitable lien on real property under Pennsylvania law.  First, a court can impose a lien to "give effect to an intention of the parties" to a contract.  *HCB Contractors v. Rouse & Assocs., Inc.*, 91cv5350, 1992 WL 176142, at *8 (E.D. Pa. July 13, 1992); *see also U.S. Bank Nat'l Ass'n for Wells Fargo Alternative Loan Tr., Series 2005-1 v. Finkel*, 164 A.3d 512, 515-16 (Pa. Super. Ct. 2017) ("an equitable lien arises from a contract indicating an intent to make certain property security for an obligation based on the parties' intent") (internal quotations omitted).  Second, a court can impose a lien because the failure to do so would result in unjust enrichment.  *HCB Contractors*, 1992 WL 176142, at *8 (equitable liens may be imposed "'as a remedial device to protect a party against some inequitable loss'") (quoting Henry L. McClintock, *Handbook of the Principles of Equity* § 118 (2d ed. 1948)); *accord Finkel*, 164 A.3d at 515-16.

### A.    Intent of the Parties

Generally, courts can impose an equitable lien based on the parties' intent when (1) there is "an obligation, usually monetary in nature, owing by one person to another," (2) there is "a *res* to which that obligation attaches," and (3) there is "an intent by all parties that the property serve

5

as security for the payment of the obligation." *See Finkel*, 164 A.3d at 514 (quoting *Kern v. Kern*, 892 A.2d 1, 8 (Pa. Super. Ct. 2005)).

Where the *res* at issue is real property, the party must have entered into an agreement unambiguously showing the party's intent to place a lien on that property. *See id.* at 516 ("[B]efore the lien can be imposed upon a particular parcel of property to secure a debt, 'there must be an agreement sufficiently clear and unambiguous evidencing such intent.'") (quoting *Mermon v. Mermon*, 390 A.2d 796, 800 (1978)). The party seeking to impose the lien must have "evidence that is 'clear, precise, and indubitable as to the intention of the parties.'" *Id.* (quoting *Mermon*, 390 A.2d at 799) (further quotations omitted); *see also U.S. Bank, Nat'l Assoc. v. McAfee*, No. 882 WDA 2022, 2023 WL 3478455, at *10-11 (Pa. Super. Ct. May 16, 2023) (denying summary judgment on equitable lien claim where bank failed to produce "clear, precise, and indubitable evidence" that husband intended a lien on his interest in the property owned with wife, and wife signed the mortgage without husband's authorization).

Here, Chase has produced evidence showing that DeNenno intended the Property to serve as security for the Chase mortgages. First, Chase has demonstrated that there was "an obligation . . . owing by one person to another." *See Finkel*, 164 A.3d at 514 (quotation omitted). It is undisputed that Chase loaned DeNenno $759,000 in connection with the May 2007 mortgage and that DeNenno promised to pay it back. ECF No. 31-6; ECF No. 31-7. It is also undisputed that Chase gave DeNenno a $177,000 home equity line of credit in May 2007, with repayment secured by a mortgage on DeNenno's real property. ECF No. 31-8.

Defendants argue that DeNenno's Chapter 7 bankruptcy discharge means that there is no longer an obligation owing from DeNenno or Boyd to Chase. *See* ECF No. 33-3 at 11-12; ECF No. 43 at 19:21-20:13. This argument is unavailing.

6

As the Court explained in its orders disposing of Defendants' motion to dismiss, motion for reconsideration, and motion for interlocutory appeal, property liens are *in rem* claims. *See In re Kressler*, 40 F. App'x 712, 713 (3d Cir. 2002) (noting that "the long-standing rule in bankruptcy [is] that a lien is a property interest—an *in rem* claim rather than an *in personam* claim"). The law is clear that a bankruptcy discharge does not "extinguish . . . *in rem* obligations." *Id.* at 714 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83-84 (1991)); 11 U.S.C. § 524(a)(2) (noting that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset" debts "as a personal liability of the debtor"). "Enforcement of an equitable lien against a *res* therefore appears to be outside the scope of [a] discharge injunction[.]" *See In re Janocha*, No. BR 06-20191, 2015 WL 128152, at *4 (W.D. Pa. Jan. 8, 2015) (citing *Long v. Bullard*, 117 U.S. 617, 620-21 (1886)) (further citations omitted).

Defendants have not meaningfully engaged with the substance of this case law, either in their papers or at oral argument on this Motion.[1] Instead, Defendants argue that equitable *in rem* claims only survive a bankruptcy discharge if they are asserted by the party with the equitable interest during the bankruptcy proceedings. *See* ECF No. 37:18-38:6. But as Chase points out, in no-asset Chapter 7 bankruptcies, creditors are not required to file proofs of claims. *See* ECF No. 31-1 at 8; *see also, e.g.*, *Geisler v. IRS (In re Geisler)*, 539 B.R. 253, 257 (W.D. Pa. 2015) ("In a no-asset Chapter 7 case . . . there is no purpose in filing proofs of claims as there are no assets to administer."). Defendants' argument is therefore a non-sequitur.

---

[1] Defendants were given numerous opportunities to cite to legal authority for their position that *in rem* claims do not survive a bankruptcy discharge but failed to do so. *See, e.g.*, ECF No. 43 at 33:1-13, 36:3-5, 37:16-38:9.

Second, Chase has produced evidence showing that there is "a *res* to which [the] obligation attaches." *See Finkel*, 164 A.3d at 514 (quotation omitted); ECF No. 31-7 (granting security interest on three properties to secure $759,000.00 loan); ECF No. 31-8 (granting security interest on three properties to secure $177,700.00 line of credit).

Third, Chase has produced evidence showing that there was "an intent by all parties that [the Property] serve as security for the payment of the obligation." *See Finkel*, 164 A.3d at 515 (quotation omitted). The mortgages themselves, which were signed and dated by both parties, clearly list the Property (Premises 1.1) as the security provided in exchange for the loans. *See* ECF No. 31-7; ECF No. 31-8.

There is ample additional record evidence confirming the parties' intent that the Chase mortgages encumber the Property. An October 15, 2012 email from a Chase representative to DeNenno conveying the partial releases of the mortgages states that "[t]he liens will remain on the 20 acre property only." ECF No. 31-13 at 2. The only 20-acre property that was ever subject to the mortgages is Premises 1.1, the Property. Additionally, in December of 2022, DeNenno brought an action in the Chester County Court of Common Pleas to quiet title to Premises 1.2.[2] ECF No. 31-1 at 8; ECF No. 31-22. Chase deposed DeNenno in connection with this quiet title action. During his deposition, DeNenno admitted under oath that the Chase mortgages were intended to encumber the Property (Premises 1.1) and not the other properties that Chase mistakenly released. *See* ECF No. 31-23 at 27:1-17 (testifying that the Chase mortgage application "was for the parcel with the 20 acres"); *id.* at 33:1-35:8 (testifying that his intention in 2007 was for the mortgages to be secured by the 20-acre property, and that his intention in

---

[2] US Bank Trust Association was initially the defendant in the quiet title action, because it owned the Chase loan on premises 1.2 at the time the action was filed, but Chase subsequently regained ownership of that loan and was substituted in as the Defendant. ECF No. 31-1 at 8-9.

2012 was for Chase "to release the 9 and a half acre [property] and release the 12 acre [property]"—*i.e.*, Premises 1.2 and 1.3A).  Finally, Defendants seemingly admitted at oral argument on this Motion that the parties' intent is not disputed.  *See* ECF No. 43 at 20:9-18 (arguing only that there was no obligation between the parties and conceding that arguing lack of intent would be "dishonest").

In sum, Chase has produced sufficient evidence "to support the findings of fact necessary to win" on its claim to an equitable lien on the Property based on the intent of the parties.  *See El*, 479 F.3d at 237.  This evidence is "clear, precise, and indubitable[.]"  *Finkel*, 164 A.3d at 516 (quotation omitted); *see also McAfee*, 2023 WL 3478455, at *10.

However, this evidence of intent applies only to DeNenno—and not to Boyd.  Boyd lacked an ownership interest in the Property until July 2014 when DeNenno and Boyd became tenants by the entireties.  She was therefore not a party to the original 2007 mortgage transactions or the 2012 releases.  The Court accordingly cannot impose an equitable lien against Boyd based on her intent.

Moreover, Defendants are correct that where spouses hold property as tenants by the entireties, "creditors of either spouse cannot acquire an enforceable lien on the property" via judgment absent a showing of fraudulent transfer.  *Amadon v. Amadon*, 59 A.2d 135, 137 (Pa. 1948); *Napotnik v. Equibank & Parkvale Savs. Ass'n*, 679 F.2d 316, 319 (3d Cir. 1982).  The Court could still impose a lien on the Property based on DeNenno's intent, though that lien would be enforceable only upon Boyd's death.  *See Napotnik*, 679 F.2d at 319 (explaining that, where spouses hold property as tenants by the entireties, "[a]t most, a creditor of either spouse may obtain a presently unenforceable lien . . . that becomes enforceable only when the other spouse dies").

The Court need not reach the issue of whether there was a fraudulent transfer of the Property that would overcome the general rule that a creditor may not obtain a lien against both spouses where property is held as tenants by the entireties. Nor does the Court need to issue a lien against DeNenno's interest that only becomes enforceable upon Boyd's death. Instead, as described in detail below, the Court finds that Chase is entitled to a lien as applied to both DeNenno and Boyd based on unjust enrichment.

## B.    Unjust Enrichment

When determining whether to impose an equitable lien based on unjust enrichment, courts "focus not on the intention of the parties, but rather on whether the [party opposing the lien] has been unjustly enriched." *McConaghy v. Bank of N.Y. for Certificate Holders CWALT, Inc.*, 192 A.3d 1171, 1175 (Pa. Super. Ct. 2018) (quotation omitted). A party seeking an equitable lien on this basis must show (1) "benefits conferred on [one party] by [the other party]," (2) "appreciation of such benefits by [one party]," and (3) "acceptance and retention of such benefits under such circumstances that it would be inequitable for [one party] to retain the benefit without payment of value." *Id.* (quoting *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 917 (Pa. Super. Ct. 2017) (en banc)). This is a fact-intensive inquiry that "depends on the unique . . . circumstances of each case." *Id.* (quotation omitted).

All of those factors are satisfied here. Chase has conferred benefits on Defendants in the form of over $1 million in loans. *See* ECF No. 31-6; ECF No. 31-7 (Chase mortgage to DeNenno for $759,000.00); ECF No. 31-8 (Chase home equity line of credit to DeNenno for up to $177,700.00). Both DeNenno and Boyd have appreciated those benefits in numerous ways. For one, Defendants have continued to own and live on the Property (despite knowing that Chase unintentionally released the wrong property in 2012) without making any mortgage payments.

10

Moreover, DeNenno used the proceeds of the first loan to pay off a subsequent mortgage issued by Chevy Chase Bank. *See* ECF No. 31-9 at 2. Then he transferred the Property to himself and Boyd. *See* ECF No. 31-17. Without the proceeds from Chase's loans, DeNenno and Boyd would have taken Premises 1.1 as tenants by the entireties subject to the Chevy Chase Bank mortgage. *See In re Jackaman*, No. 99-19029, 2000 WL 192973, at \*3 (Bankr. E.D. Pa. Feb. 15, 2000) (noting that conveying the property "to Debtor and his wife as tenants by the entireties did not alter the" existing judgment lien on the property against Debtor, "since under Pennsylvania law a conveyance of encumbered property does not affect the lien") (quotation omitted); *id.* at \*8 ("When he conveyed the Residence to himself and his wife as tenants by the entireties, they acquired their interests subject to the lien"). In other words, without profiting from Chase's error, Defendants would have had to make payments on the Chevy Chase mortgage while living on the Property. Defendants proceeded to encumber the Property with over $1 million in additional debt. *See* ECF No. 31-1 at 7 (describing two Metro Bank mortgages taken out on the Property for $688,000 and $700,000, the latter of which was taken out after the transfer to Boyd); *see also* ECF No. 31-18; ECF No. 31-19.

Finally, and crucially, it would be inequitable to permit Defendants to retain these benefits "without payment of value." *See McConaghy*, 192 A.3d at 1175. Chase made an error in releasing the Property from its mortgages to DeNenno instead of releasing Premises 1.2 and 1.3A, as intended. However, Chase is now in the position where it has no security for over $1 million worth of loans to DeNenno, despite the parties' clear intent for the Property to serve as security for those loans. *See supra* at 6-9. The loans that Chase gave DeNenno have not been paid off and totaled $918,029.07 and $140,260.42 as of March 2025. *See* ECF No. 31-1 ¶¶ 17-

11

18; ECF No. 33-3 at 2 (accepting allegations in paragraphs 17 and 18); ECF No. 31-27 at 2 (declaration affirming loan balances as of March 19, 2025 and March 21, 2025, respectively).

These undisputed facts constitute unjust enrichment. It would be fundamentally unfair to permit Defendants to continue retaining the numerous benefits they have enjoyed from Chase's inadvertent release of the Property, all while Chase remains without security on over $1 million worth of loans. *See McConaghy*, 192 A.3d at 1175 (a party is unjustly enriched where there has been "acceptance and retention of . . . benefits under such circumstances that it would be inequitable for [one party] to retain the benefit without payment of value"). Defendants' unjust enrichment serves as an independent basis for imposing an equitable lien on the Property against both DeNenno and Boyd. The Court accordingly will grant summary judgment in favor of Chase and deny summary judgment for Defendants on these grounds.

### C.    Defendants' Remaining Arguments Fail

Defendants raise several additional arguments against the Court imposing an equitable lien on the property, all of which fail.

#### i.    Bankruptcy Discharge

First, Defendants generally argue that Chase may not obtain an equitable lien on the Property because it did not seek one during DeNenno's bankruptcy proceedings. As discussed above, *supra* at 7, this defense fails because (1) equitable liens are *in rem* claims; (2) *in rem* claims survive bankruptcy discharges; and (3) creditors in Chapter 7 bankruptcy proceedings are not required to file proofs of claims. *See In re Kressler*, 40 F. App'x at 713; *In re Janocha*, 2015 WL 128152, at *4 ("[e]nforcement of an equitable lien against a *res* . . . appears to be outside the scope of [a] discharge injunction") (collecting cases).

12

        ii.        <u>Laches</u>

"Laches is an equitable doctrine which bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another." *See In re Est. of Aiello*, 993 A.2d 283, 287 (Pa. Super. Ct. 2010). The party asserting laches as an affirmative defense must show that there was (1) "a delay arising from [plaintiff's] failure to exercise due diligence" and (2) "prejudice . . . resulting from the delay." *Id.* Prejudice exists where the party asserting laches "change[d] his position to his detriment." *Id.*

Here, Defendants argue that laches applies because Chase knew that it erroneously released the Property as early as 2012—or at least failed to exercise due diligence to learn of its error in a timely fashion. *See* ECF No. 33-3 at 2-3 (arguing that whether Plaintiff "was unaware of the error in recording the Releases until 2022 is a disputed fact because . . . [Plaintiff's] Tampa Florida legal department prepared the document in 2012 . . . a Vice President of Chase signed the document . . . Chase sent the document for recording . . ." and more). According to Defendants, Chase should have asked the bankruptcy court during DeNenno's Chapter 7 proceedings to apply a lien. *See id.* at 10 (claiming Chase's failure to ask the bankruptcy court to apply the liens "is but one example of laches"); *id.* at 4 (claiming that Chase knew about the error in the partial releases but still did not seek an equitable lien until years later).

Regardless of when Chase actually learned of its error, Defendants' laches defense fails because they have not argued that Chase's delay in seeking an equitable lien prejudiced them in any way. *See Scott v. BAC Home Loan Servicing, L.P.*, 13cv5540, 2016 WL 320219, at *6 (E.D. Pa. Jan. 27, 2016) (quotation omitted) (noting that although plaintiff was "[c]ertainly . . . guilty of delay" in bringing lawsuit, laches did not bar the claim because defendant "failed to show that

13

they changed their position in any way or detrimentally relied on [p]laintiff's delay in filing suit"); *see also id.* ("laches is an appropriate remedy only upon a showing of prejudice").

The closest Defendants come to arguing they were prejudiced by Chase's delay is their assertion that they "would not be here" if Plaintiff "had asked the . . . bankruptcy court to apply equity" and allow Plaintiff "to have liens on the Property." ECF No. 33-3 at 10. This is mere speculation. "Specious objections" are insufficient to create a genuine dispute of material fact to defeat summary judgment. *El*, 479 F.3d at 238.

iii.  <u>Unclean Hands</u>

Unclean hands is another equitable doctrine that can serve as an affirmative defense when a party is seeking equitable relief. *See McConaghy*, 192 A.3d at 1176. It requires the party "'seeking equity [to] act fairly and without fraud or deceit as to the controversy at issue.'" *Id.* (quoting *Terraciano v. Com., Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237-38 (Pa. 2000)). The application of this doctrine "is confined to willful misconduct" concerning the subject matter of the litigation. *Id.* (quoting *Shapiro v. Shapiro*, 204 A.2d 266, 268 (Pa. 1964)).

Defendants suggest that Chase has unclean hands because it erroneously released the Property from the mortgages. *See* ECF No. 33-3 at 1 ("Chase asks this Court to clean up its compounded errors . . ."); *id.* at 2-3 (suggesting that Chase knew it released the wrong properties). But Defendants fail to point to any fraudulent or willful misconduct that would support a finding of unclean hands. An inadvertent error does not amount to fraud or willful misconduct. This defense therefore fails as a matter of law.

14

## IV.    CONCLUSION

Defendants have been unjustly enriched by their continued ownership of and residence on the Property.  It would be fundamentally unfair to continue permitting Defendants to benefit from Chase's unintentional error and leaving Chase without security for its over $1 million in loans to DeNenno.  The Court accordingly grants summary judgment in favor of Chase and denies summary judgment for Defendants.  The Court will impose an equitable lien on Premises 1.1.  An appropriate Order will follow.

BY THE COURT:

MARY KAY COSTELLO
United States District Judge

15